NORTHWESTERN PORT HURON CO. v. BABCOCK.

(Circuit Court of Appeals, Eighth Circuit. March 8, 1915. Rehearing Denied May 17, 1915.)

No. 4276.

1. JUDGMENT ☞956—CONSTRUCTION—EVIDENCE—OPINIONS OF COURT.

Under a state statute requiring the opinion of the Supreme Court to be filed as a part of the record, such an opinion may be introduced in evidence in a federal court and examined in order to properly interpret the judgment of the court.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1822–1825; Dec. Dig. ☞956.]

2. JUDGMENT ☞731—MATTERS CONCLUDED—ISSUES NOT ADJUDICATED.

In an action in a state court on promissory notes, defendant answered, expressly admitting the execution of the notes but pleading a counterclaim. Plaintiff moved to dismiss, which was denied. The only issue tried or submitted to the jury was on the counterclaim upon which judgment was rendered for defendant. On appeal plaintiff contended that the judgment should at least be set off against the amount due on the notes but was overruled; the court stating in its opinion that the notes were not in issue in the trial court. Held, that defendant's liability on the notes was not res judicata, since they were clearly not adjudicated on the merits, although plaintiff was entitled to judgment

thereon on the pleadings, nor was it plaintiff's fault that they were not so adjudicated.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1259, 1261; Dec. Dig. ⬤⟾731.]

3. COURTS ⬤⟾494—EQUITABLE RELIEF AGAINST STATE JUDGMENT.

A federal court of equity may allow an equitable set-off against a judgment of a state court, where the judgment plaintiff is not only a nonresident of the state but is insolvent.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1355–1371; Dec. Dig. ⬤⟾494.]

4. JUDGMENT ⬤⟾847—EQUITABLE RELIEF AGAINST—SUIT TO ESTABLISH SET-OFF—EFFECT OF ASSIGNMENT.

An attorney, although entitled under the law of the state to a lien for services on a judgment obtained in favor of his client, which lien is superior to a right of set-off against the judgment, if notice is previously filed, who, with notice of such claimed set-off, takes an assignment of the judgment in settlement of his claim, merges his lien, and cannot set up such assignment as a defense to a suit in equity by the judgment defendant to enforce his right of set-off.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1548–1555; Dec. Dig. ⬤⟾847.]

Appeal from the District Court of the United States for the District of South Dakota; J. D. Elliott, Judge.

Suit in equity by the Northwestern Port Huron Company against Howard Babcock. Decree for defendant, and complainant appeals. Reversed.

A. J. Keith and L. M. Morris, both of Sioux Falls, S. D., for appellant.

L. W. Crofoot, of Aberdeen, S. D., for appellee.

Before ADAMS and CARLAND, Circuit Judges, and AMIDON, District Judge.

CARLAND, Circuit Judge. Appellant filed its bill in the court below to enjoin the collection of two judgments rendered against it and in favor of Olaf Iverson and Bjorn Iverson, respectively, on March 1, 1907, in the circuit court of the county of Roberts, S. D., and also to have the amount due on certain promissory notes described in the bill offset against the amount due on said judgments. Babcock was the only defendant served with process; the defendants Olaf Iverson and Bjorn Iverson not being found within the district of South Dakota. The defendant Babcock answered the bill and pleaded as a defense that the right of appellant to recover upon the notes set forth in the bill had been finally adjudicated against it on the merits by the judgment of the circuit court for the county of Roberts in favor of Olaf Iverson. He further pleaded that he was the owner of said judgments by assignment thereof from the Iversons; and that he took said judgments in settlement and satisfaction of two attorney's liens for services rendered in the action in which said judgments were obtained. No affirmative relief was asked in the answer. The cause came on for final hearing on the pleadings and proofs, and as a result

thereof the bill was dismissed on the merits for want of equity. The pleadings and proofs established the following facts:

On May 10, 1904, at Veblen, S. D., Olaf Iverson purchased from appellant the following farm machinery at the agreed price of $3,469.60:

1 Port Huron Traction Engine 30 Horse Power (traction rating)—Simple-Compound.
1 Straw Burning Attachment.
1 Jacket Force Feed Lubricator.
1 Loco Cab Mocking Bird Whistle Canopy Top.
1 Port Huron Rusher Separator, width of Cylinder 40 inches; of Separator 64 inches.
1 Stacker Farmers Friend (Kind).
1 Band Cutter and Feeder Parsons (Kind).
1 Elevator-Weigher-Wagon Loader-Bagger Perfection (Kind).
1 Drive Belt 150 feet long 8 inches wide 4 ply-canvas Rubber.  Saw Mill: Mounted-Unmounted:  Right-Left Hand (Kind).
1 Saw 18x36 (Canvas Cover).
  Port Huron Cylinder Corn Sheller.
  Port Huron Husker-Shredder (Adjustable) Sieve.
1 Ham Head Light.
1 Woods Tender complete.
1 Wood Tank 12½ bbl.
1 Tank Pump and Hose Free.

In payment of this sum he executed and delivered to appellant the following promissory notes:

| | |
|---|---:|
| Consisting of note due Oct. 1, 1904 | $1,219 60 |
| Note due Oct. 1, 1905 | 1,000 00 |
| Note due Oct. 1, 1906 | 1,000 00 |
| Note due Oct. 1, 1904 | 125 00 |
| Note due Oct. 1, 1905 | 125 00 |
| | $3,469 60 |

—with interest at 8 per cent.

Bjorn Iverson indorsed these notes before delivery. On or about February 11, 1905, appellant commenced an action against Olaf and Bjorn Iverson in the circuit court for the county of Roberts, S. D., to recover the amount due on the notes above mentioned, except the note for $1,219.60, due October 1, 1904, which the complaint in the action admitted had been paid by the application of the proceeds of a chattel mortgage foreclosure sale. The chattel mortgage having been given on the farm machinery by Olaf Iverson to secure the payment of the notes. Appellant, in the action so commenced, claimed the right to declare the remaining notes due by virtue of a certain provision of the chattel mortgage which gave the appellant the option to declare the whole amount of the notes due on the happening of certain contingencies. Bjorn Iverson answered the complaint, but, as the action as to him was subsequently dismissed, his answer may be disregarded. Olaf Iverson answered the complaint and specifically admitted the execution and delivery of the notes, alleged that they had been paid, and by way of counterclaim set forth facts tending to show that the chattel mortgage given to secure the notes had been foreclosed in a county where the mortgage had not been recorded, and that by reason of this fact the appellant was liable in conversion to Olaf Iverson for the value of the machinery.

223 F.—31

Appellant denied generally the allegations of the counterclaim. The cause subsequently came on for trial in the circuit court for Roberts county, and the appellant at the opening of the case moved to dismiss the action. The motion was granted as to Bjorn Iverson and denied as to Olaf Iverson. Judgment was subsequently entered in favor of Bjorn Iverson against appellant for costs amounting to $57.60. The motion to dismiss the action as to Olaf Iverson was renewed by appellant at the close of all the evidence and again denied as before. The trial proceeded on the counterclaim and resulted in a verdict by the jury in favor of Olaf Iverson against appellant for $3,500, being the alleged value of the property claimed to have been converted by appellant. Judgment was subsequently entered on this verdict amounting to $3,512.60. The judgment of $57.60 was rendered March 6, 1907, and the judgment for $3,512.60, March 1, 1907. From the judgment in favor of Olaf Iverson, an appeal was prosecuted by appellant to the Supreme Court of South Dakota. For the purpose of that appeal a bill of exceptions was settled and allowed by the trial judge and became a part of the record. It appears from the bill of exceptions that the trial judge charged the jury as follows:

"Gentlemen of the Jury: Under the undisputed evidence in this case the court is of the opinion that Olaf Iverson is entitled to a verdict at your hands for the value of this threshing rig. The court will therefore direct the following verdict. There is only one question for you to decide in this case and that is to decide what was the value of this threshing rig at the time it was taken by the plaintiff in this case for foreclosure under this mortgage sale. While some evidence has been offered in regard to a sale being made of this machine, the court is of the opinion that said mortgage sale was a void mortgage sale and the plaintiff in this case has converted this threshing machine to its own use and benefit. You may swear a bailiff, Mr. Clerk, to take charge of this jury. There is a blank left in this verdict for filling in whatever amount you may find. After you have ascertained the value of the machine you may insert that in the form of verdict. You may retire."

On appeal the Supreme Court affirmed the judgment in favor of Olaf Iverson and denied a rehearing. The Supreme Court decided that the alleged conversion of the mortgaged property was properly pleaded as a counterclaim and that there was sufficient evidence of conversion. Then follows this language in the opinion of the court:

"It is further contended by the appellant that, if in fact there was sufficient evidence to establish the conversion of the mortgaged property, it does not appear that the defendant sustained any damages, and in any event he would be entitled to recover only the value of the property, less the amount of the mortgage debt. This contention is untenable, for the reason that it was disclosed by the record that the plaintiff had previous to the trial disposed of the notes, and that they were still unpaid and outstanding as against the defendants. The plaintiff offered no evidence in the action tending to prove the amount due upon the notes, and hence the controversy as to the notes and amount due thereon was practically out of the case, and the defendant Olaf Iverson, having introduced evidence showing the value of the mortgaged machinery at the time of its alleged conversion by the plaintiff, was entitled to recover the value of the same, and there was ample evidence to support the findings of the jury that the value of the mortgaged property at the time of the conversion was $3,500 found by them in favor of the defendant Olaf Iverson by their verdict."

After the affirmance of the judgment and denial of a rehearing, but before the remittitur was sent to the lower court, the appellant

petitioned the Supreme Court for a modification of the judgment below in favor of Iverson. The relief asked for was that the case be remanded to the circuit court, with directions to enter a judgment in favor of appellant for the balance due on the notes after deducting the amount of the judgment in favor of Olaf Iverson. In this petition for a modification a claim was made for the amount due on all the notes given by Olaf Iverson, including the first note due October 1, 1904. After a hearing of this petition, the Supreme Court denied the same without opinion. The filing of the petition for a modification was in effect an attempt to retry the case in an action at law on the facts in an appellate tribunal, and we attach no more importance to the decision thereon than we do to the judgment of affirmance and the denial of a rehearing. Whatever the Supreme Court did was as an appellate tribunal; it rendered no new judgment, but simply affirmed the judgment of the circuit court for Roberts county, which is the real judgment which adjudicated appellant's right to recover on the notes if such right was adjudicated at all.

The defendant Babcock was the attorney for the Iversons during all the litigation in the state courts and had actual knowledge of all the facts appearing therein. On April 24, 1907, less than a month after the rendition of the judgment in favor of Iverson, Babcock filed a notice with the clerk of the court where the judgment was docketed, claiming an attorney's lien under the laws of South Dakota for $1,800 for services rendered in the action. July 31, 1908, he filed in the same place a notice pursuant to law that he claimed an attorney's lien for services rendered therein in the sum of $3,500. November 23, 1908, Olaf Iverson, in settlement of the claim of Babcock for attorney's fees, assigned, transferred, and set over all his interest in and to the judgment in his favor against appellant to the defendant Babcock. February 11, 1909, Bjorn Iverson assigned the judgment in his favor against appellant to Babcock. No other consideration for these judgments was paid by Babcock than the value of his services as attorney for the Iversons in the action in which the judgments were rendered.

The pleadings and the evidence fully warrant the finding that the Iversons are nonresidents of the state of South Dakota and are insolvent as insolvency is defined by the law of that state (Civil Code 1903). By this law a person is deemed insolvent when he is unable to pay his debts as they become due in the ordinary course of business, which also is the definition of the common law. In Cunningham v. Norton, 125 U. S. 90, 8 Sup. Ct. 811, 31 L. Ed. 624, it was said:

"When a person is unable to pay his debts he is understood to be insolvent. It is difficult to give a more accurate definition of insolvency."

The definition of the bankruptcy law is not controlling here. The evidence in the present case is to the effect that appellant is owner and holder of all the notes given by the Iversons on May 10, 1904, and no part of the same has been paid, except $352.70 paid October 15, 1904, which sum paid one note for $125 and interest amounting to $2.70; the balance of $225 being applied on the note for $1,219.60. What became of the amount received on foreclosure of the chattel mortgage, if any, does not appear. It is probable that the defendant was of the opin-

ion that, if the liability of the Iversons on the notes had not been adjudicated in the suit in Roberts county, the amount due thereon became more or less immaterial.

It thus appears from the foregoing facts that, if appellant may not be granted the relief prayed for in this action, it will have lost, not only the purchase price of the farm machinery, but will also be obliged to pay the Iverson judgments now amounting to over $5,500. Such an unjust result ought not to be brought about, unless there be no escape therefrom under well-settled principles of law and equity. The defendant Babcock seeks to defeat the relief asked for by appellant by insisting that the right of appellant to recover anything on the notes given by Iverson was finally adjudicated against it by the proceedings in the circuit court and Supreme Court of the state of South Dakota, and in this behalf the well-established rule of law is invoked that, where the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented and determined in the former. The law is plain enough in cases of the kind mentioned, but the question for determination in this case, as well as all others of like character, where the plea of res judicata is interposed, is: Do the facts show that the question at issue was determined on its merits or might have been so determined in the former action? That we may not be misunderstood, it is proper to state that in any examination we may make of the proceedings in the Supreme and circuit courts of South Dakota, which resulted in the Olaf Iverson judgment, our single object will be to determine from such examination whether the right of the appellant to recover on the Iverson notes was adjudicated therein, or whether, under the circumstances in that case, the right of the appellant to recover on the notes might have been determined therein on the merits. Whatever the proceedings were in the state courts, they stand here unquestioned.

The first question presented for decision is: Was the right of appellant to recover on the notes decided on the merits in the former suit? This cannot be seriously claimed; neither the trial court nor the Supreme Court had any such idea and such was not the fact; and defendant Babcock has at all times known this. Appellant desired to get out of the circuit court for Roberts county and moved at the beginning of the trial and at its close to dismiss its action, but it was held for the purpose only of trying the issues arising on the counterclaim. The Supreme Court, on appeal from the judgment in reply to the suggestion of counsel for appellant that Iverson could not recover only the value of the property alleged to have been converted, less the mortgage debt, used the language hereinbefore quoted, showing clearly that the Supreme Court had no idea that the liability of the Iversons on the notes had in any wise been adjudicated in the court below.

[1] We have no doubt that we have the right to examine the opinion of the Supreme Court in a case of this kind in order to properly interpret its judgment. A duly certified copy of the opinion was introduced in evidence in the court below, and the Revised Codes of South Dakota 1903, c. 2, art. 3, par. 634, p. 117, also page 872, provide for the filing of

these opinions as public records. Stearns v. Lawrence, 83 Fed. 738, 28 C. C. A. 66.

[2] The trial judge had no idea that the right of recovery on the notes was in any way involved at the trial in the circuit court for Roberts county, as appears by his language hereinbefore quoted, taken from the bill of exceptions duly settled and allowed. We therefore think that it is plain from the face of the record that the right to recover on the notes was not in fact decided on the merits. We next come to inquire if, under the facts in this case, the appellant's right to recover on the notes must be held to have been adjudicated against it in the former suit for the reason that it might have been. We do not think that this is a case where the might-have-been rule can be applied. It must be borne in mind that although appellant in the former suit endeavored to get out of court it was far from being successful, and notwithstanding its desire to get out, it may insist upon whatever rights its forced position gave it. This being the case, it is proper to inquire as to what was the status of appellant with reference to its claim on the notes at and during the proceedings in the state court. This is certainly not a case where a party to a former action has negligently failed to set up a claim therein which he might have set up—far from it. Appellant went into the circuit court asserting in his complaint the execution and delivery of the notes by the Iversons and praying for judgment. Olaf Iverson specifically admitted the execution and delivery of the notes. Laying aside for the moment the counterclaim in which Olaf Iverson was plaintiff, the appellant, when the trial opened, was entitled to judgment on the pleadings for the amount due on the notes sued upon without offering any evidence whatever. What did appellant fail to do in the circuit court of the state to establish his right of recovery on the notes? The answer to this question will determine whether the liability of the Iversons on the notes might have been determined in the suit in the circuit court for Roberts county, and also as to whether the appellant was guilty of such negligence as will bar it from any relief in the present action. It could not control the charge of the court. It was in court with its claim established beyond a doubt, and, while it was held there so that Iverson could prove his claim against it, Iverson recovered a $3,500 verdict and appellant nothing. On its appeal from the judgment it urged that, in case the Iverson verdict must stand, it be allowed as a credit on the amount due on the notes. In its petition for a modification of the judgment, it asked the same thing, and now, when attempting to accomplish the same purpose in the present action, it is met with the defense that it may not do it here for the reason that it might have done it there. In view of the facts appearing of record, it is quite plain, we think, that it cannot be said that appellant might have litigated the liability of the Iversons on the notes in question in the circuit court for Roberts county, and for a much stronger reason it cannot be said that appellant was guilty of such negligence in presenting its claim in that litigation as would bar it from any relief in equity in the present action. We are therefore of the opinion that the plea of former adjudication has wholly failed, and that the

facts presented in the record entitle the appellant to resort to a court of equity for relief, if he be otherwise entitled thereto.

[3] It certainly would be inequitable to allow the defendant to enforce the judgment now amounting to more than $5,500 against the appellant, and we cannot see that the position in which appellant finds itself has been in any wise brought about through its own negligence or fault. The following cases we think establish beyond doubt that a court of equity, under the facts proven in this case, has the right to allow an equitable set-off against the judgment, although it be a judgment of a state court. Gaines v. Fuentes, 92 U. S. 10, 23 L. Ed. 524; Barrow v. Hunton, 99 U. S. 80, 82, 25 L. Ed. 407; Johnson v. Waters, 111 U. S. 640, 667, 4 Sup. Ct. 619, 28 L. Ed. 547; Arrowsmith v. Gleason, 129 U. S. 86, 101, 9 Sup. Ct. 237, 32 L. Ed. 630; Marshall v. Holmes, 141 U. S. 599, 12 Sup. Ct. 62, 35 L. Ed. 870; National Surety Co. v. State Bank of Humboldt, 120 Fed. 593, 56 C. C. A. 657, 61 L. R. A. 394 (8th Circuit).

By the clear weight of authority, the nonresidence of a judgment creditor is in itself sufficient ground to justify a court of equity to interpose and allow a set-off against the judgment. Especially would this be true if the judgment creditor be both insolvent and nonresident. North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co. et al., 152 U. S. 596, 14 Sup. Ct. 710, 38 L. Ed. 565, in which case it was said:

"In addition to insolvency, it is held by many well-considered decisions, including those of Illinois, that the nonresidence of the party against whom the set-off is asserted is good ground for equitable relief. Quick v. Lemon, 105 Ill. 578; Taylor v. Stowell, 4 Metc. (Ky.) 175; Forbes v. Cooper, 88 Ky. 285, 11 S. W. 24; Edminson v. Baxter, 4 Hayw. (Tenn.) 112 [9 Am. Dec. 751]; Davis v. Milburn, 3 Iowa, 163. It is not deemed necessary to review these cases and make quotations from them. They fully establish the principles for which they are cited."

In Loy v. Alston et al., 172 Fed. 90, 96 C. C. A. 578, it was said:

"If the court below should decline to grant relief in this suit, the complainant must pay the amount due upon the judgment against him, and then bring another action at law in North Carolina upon his Missouri judgment and collect the judgment he may recover in that action * * * by subsequent execution or other process issued in that state. This remedy is not as prompt, efficient, and adequate as the simple decree of this court that Alston shall credit on the judgment it has rendered in his favor the amount due to Loy on the judgment against Alston in the state court."

[4] Defendant sets up in his answer that the consideration for the assignment of the judgments from the Iversons to him was in consideration of legal services rendered in the actions in which the judgments were obtained. It is not pleaded, however, in the answer, that the defendant has an attorney's lien upon the Iverson judgments for reasonable attorney's fees rendered in the action in which the judgments were obtained, with a prayer that the amount of this lien be ascertained, and that it be held superior to the right of set-off asked by appellant. The straight claim is made that the defendant is owner of the judgments and of the whole thereof, and that the judgments were obtained from the Iversons in settlement of the liens for services filed by the defendant. It is argued in brief that the laws of South Dakota provide for an attorney's lien upon money due his client in the hands of an adverse

party from the time of giving notice to the adverse party or after judgment in a court of record; that such a notice may be given and the lien may be made effective against the judgment debtor by entering the same in the judgment docket opposite the entry of the judgment. Revised Political Code 1903, § 702. It seems also to be the law of South Dakota that this lien is superior to the right to set off mutual judgments, if the notice is given or filed before the institution of proceedings to set off the judgments, except as to mutual judgments rendered in the same action. Pirie v. Harkness, 3 S. D. 178, 52 N. W. 581; Hroch v. Aultman & T. Co., 3 S. D. 477, 54 N. W. 269; Sweeney v. Bailey, 7 S. D. 404, 64 N. W. 188; Lindsay v. Pettigrew, 8 S. D. 244, 66 N. W. 321.

We are not called upon in this case to determine what might have been done if defendant was here asserting an attorney's lien for a reasonable amount for the reason that the defendant has become the owner of the judgments and the liens no longer exist. The lesser interest has been merged in the greater. We certainly, as a court of equity, could not treat the whole amount due on these judgments as an attorney's lien and give it precedence over the right of the appellant to set off the amount due on the notes against the judgment. Upon the whole record we are of the opinion that the judgment below must be reversed and the case remanded, with instructions to the trial court to grant the relief prayed for in the bill.

And it is so ordered.